**The PEOPLE of the State of Colorado, Complainant,**

**v.**

**Charles William RASURE, Jr., Respondent.**

**Nos. 07PDJ078, 07PDJ085, 08PDJ004, 08PDJ027, 08PDJ040, 08PDJ057.**

Office of the Presiding Disciplinary Judge of the Supreme Court of Colorado.

May 20, 2009.

DECISION AND ORDER IMPOSING SANCTIONS PURSUANT TO C.R.C.P. 251.19(c)

I. *ISSUE*

Disbarment is generally appropriate when a lawyer knowingly converts client property and causes injury or potential injury to a client. Respondent engaged in a pattern of misconduct, which included the knowing conversion of client property. Respondent failed to answer the complaints or otherwise participate in these proceedings in a meaningful manner. What is the appropriate sanction for his misconduct?

***SANCTION IMPOSED:*** **ATTORNEY DISBARRED**

II. *PROCEDURAL HISTORY*

The People filed complaints in this consolidated matter on January 17, 2008 (07PDJ078), December 19, 2007 (07PDJ085), January 14, 2008 (08PDJ004), March 13, 2008 (08PDJ027), April 15, 2008 (08PDJ040), and June 16, 2008 (08PDJ057). Respondent failed to answer any of the complaints and the Court granted motions for default in each of the above-captioned cases. Upon the entry of default, the Court deems all facts set forth in the complaints admitted and all rule violations established by clear and convincing

evidence.[1]

## III. *ESTABLISHED FACTS AND RULE VIOLATIONS*

The Court hereby adopts and incorporates by reference the factual background of this case fully detailed in the admitted complaints.[2] Respondent took and subscribed the Oath of Admission and gained admission to the Bar of the Colorado Supreme Court on May 15, 1995. He is registered upon the official records, Attorney Registration No. 25569, and is therefore subject to the jurisdiction of the Court pursuant to C.R.C.P. 251.1.[3]

### *The Wilson Matter—07PDJ078*

Clyde and Barbara Wilson retained Respondent to assist them with the sale of their residence after a lien had been placed on the property two days before its sale. Respondent thereafter arranged for the sale to close with the lien amount to be held in escrow by Respondent pending resolution of the dispute. At Respondent's request, Mr. Wilson tendered a check to Tasco, L.L.C., a company formed and owned by Respondent, for the amount of the lien ($13,600.00) on December 6, 2005. Respondent endorsed the check, deposited it into his operating account, and began spending the escrow funds the following day without authorization from the Wilsons.

On August 20, 2006, Respondent filed a complaint in La Plata County District Court on behalf of the Wilsons. Respondent took no further action on the case, and the district court dismissed it for lack of prosecution on January 29, 2007. Throughout the first half of 2007, the Wilsons continually asked Respondent for the status of the litigation and for the return of their escrow funds. The Wilsons told Respondent that they needed the $13,600.00 to assist with the purchase of a home in Texas. Respondent initially failed to return the escrow funds and instead provided the Wilsons with a variety of excuses for the delay in returning them. On August 28, 2007, Mr. Wilson complained to the People and shortly thereafter Respondent returned the $13,600.00 to the Wilsons.

█ Respondent exercised, albeit temporarily, unauthorized dominion and control over $13,600.00 held in trust on behalf of his clients and used these escrow funds for his own purposes. His knowing conversion of the escrow funds constitutes a violation of Colo. RPC 8.4(c). Respondent also violated Colo. RPC 1.15(a) when he knowingly failed to keep the escrow funds separate from his own.

### *The Bishop Matter—07PDJ085*

On October 16, 2000, Genevieve Bishop filed a lawsuit against her ex-husband in Lake County, Illinois related to businesses they owned together. Ms. Bishop's ex-husband later died in January 2003. His widow subsequently filed a petition for the formal probate of his will in La Plata County District Court. Ms. Bishop then retained Respondent and paid him a $5000.00 retainer fee to represent her in matters related to the probate case.

On July 11, 2003, Respondent filed a claim in the probate case of "unknown value but anticipated to be in excess of $200,000.00" on behalf of Ms. Bishop. The claim alleged fraud, breach of contract, and breach of fiduciary duty related to various entities controlled by her ex-husband. Both sides filed several pleadings related to the claim, including a motion to dismiss filed by the personal representative. On December 3, 2003, the probate court held the motion to dismiss in abeyance and ordered Ms. Bishop to file a civil action in a court of appropriate jurisdiction within thirty days and provide proof within forty days. If Ms. Bishop failed to comply with this order, the probate court would grant the personal representative's motion to dismiss.

1. *See People v. Richards*, 748 P.2d 341, 346 (Colo. 1987).

2. *See* the People's complaints in 07PDJ078, 07PDJ085, 08PDJ004, 08PDJ027, 08PDJ040, and 08PDJ057 for further detailed findings of fact.

3. The Court takes judicial notice of the fact that the Colorado Supreme Court immediately suspended Respondent from the practice of law on January 16, 2008.

The next day, Respondent notified the probate court of the civil action in Lake County. On January 24, 2004, the Lake County civil action was dismissed without prejudice at the request of Ms. Bishop's Illinois counsel in order to pursue the claim in Colorado. Respondent filed a civil action in La Plata County on March 17, 2004.

On June 7, 2004, the La Plata District Court dismissed the civil action for lack of subject matter jurisdiction. The district court found that Ms. Bishop had failed to file the civil action in a timely manner and failed to provide proof of that filing to the probate court. Respondent first filed a notice of appeal with the Colorado Court of Appeals, but then later filed a notice of dismissal. Ms. Bishop denies that she authorized the dismissal motion.

Respondent violated Colo. RPC 1.3 when he failed to file an action in La Plata County District Court against the ex-husband's estate within the deadline set by the probate court. Respondent also violated Colo. RPC 1.3 when he failed to prosecute the appeal. As a result, Ms. Bishop lost her right to pursue her claims against her ex-husband's estate.

### *The Mazili Matter—08PDJ004*

On April 21, 2006, Christine Mazili retained Respondent to represent her personally and as the personal representative of her father's estate in litigation related to the repayment of certain loans. Ms. Mazili paid Respondent a $3000.00 retainer fee that day and an additional $2000.00 on April 27, 2006. Respondent deposited both checks into COLTAF accounts.

On May 1, 2006, Respondent transferred the $3000.00 into his operating account even though he had only performed a total of $1060.00 worth of work up to that point. Respondent then wrote a number of sizeable checks from this account. On May 11, 2006, Respondent transferred the $2000.00 into his operating account even though he had only performed a total of $2580.00 worth of work up to that point.

On May 16, 2006, Respondent filed a two-sentence response to a motion for summary judgment filed in the litigation. On July 5, 2006, the court granted the motion for summary judgment and found no dispute as to the facts and law based on the response filed by Respondent. Respondent thereafter failed to notify Ms. Mazili for over two months that summary judgment had been entered against her. He never sought reconsideration of the court's order.

Ms. Mazili had also retained Respondent to commence a legal matter against her sister on April 28, 2006. Ms. Mazili informed Respondent that time was of the essence in the matter. Respondent failed to take any action in this matter over a period of five months.

Pursuant to the fee agreement, Respondent earned the entire $5000.00 retainer fee by July 29, 2006. Nevertheless, Respondent violated Colo. RPC 8.4(c) when he transferred Ms. Mazili's entire retainer fee to his operating accounts before he fully earned it and violated Colo. RPC 1.15(a) and (f)(1) when he failed to hold the unearned funds separate from his own. Respondent also violated Colo. RPC 1.3 when he neglected Ms. Mazili with regard to the dispute with her sister. Finally, Respondent violated Colo. RPC 1.4(a) and (b) when he failed to inform Ms. Mazili about the district court's entry of summary judgment until several months later, failed to provide Ms. Mazili with a copy of the order granting summary judgment, and failed to adequately communicate with Ms. Mazili concerning the dispute with her sister.

### *The Albrecht Matter—08PDJ027*

In April 2004, Christine Albrecht retained Respondent to assist in a dispute involving the sale of real estate. Ms. Albrecht gave Respondent $4,800.00 to hold in escrow pending resolution of the dispute. Respondent deposited the escrow funds into a COLTAF account and the escrow funds remained in the COLTAF account until Respondent removed them when the account was closed in June 2004. Respondent did not notify Ms. Albrecht that he had removed the escrow funds from the COLTAF account and did not

seek or receive authorization for him to exercise dominion or control over such funds.

The real estate dispute eventually resolved itself without further assistance from Respondent. Beginning in September 2006, Ms. Albrecht and others on her behalf began contacting Respondent seeking a refund of the escrow funds. Respondent initially failed to reply to these contacts, but later promised action to return the escrow funds. Respondent failed to follow through on any of his promised action.

On August 24, 2007, Ms. Albrecht complained to the People who shortly thereafter commenced an investigation. The People asked Respondent to provide a current bank statement demonstrating that he continued to hold Ms. Albrecht's funds in trust. Respondent promised to provide such a statement, but then failed to do so. The People then issued notices of deposition and subpoenas to Durango banks where Respondent maintained accounts.

Respondent did not respond to the request for investigation or substantively participate in the investigation. In early October 2007, Respondent paid $4,800.00 to Ms. Albrecht in the form of a check drawn on a personal account with an entity called "E–Trade Complete."

Respondent violated Colo. RPC 8.4(c) when he knowingly exercised, albeit temporarily, unauthorized dominion or ownership over $4800.00 held in trust on behalf of his client. Respondent also violated Colo. RPC 8.1(b), Colo. RPC 3.4(c), and C.R.C.P. 251.5(d) when he knowingly failed to respond to requests by the People for information and therefore disobeyed an obligation under the rules of a tribunal.

### *The Johnson Matter—08PDJ040*

In early 2007, Margarita Johnson hired Respondent to serve as counsel for her mother's estate. Ms. Johnson's husband paid Respondent a $17,500.00 retainer fee for his services. Respondent proceeded to obtain a tax identification number for the estate and later sent a form to Ms. Johnson by which she would accept appointment as the estate's personal representative.

Beginning in June 2007, Ms. Johnson sent Respondent e-mails inquiring about the status of the probate case. Respondent told Ms. Johnson that the probate court had rejected his pleadings for technical reasons and blamed the probate court for the delay in the matter. In fact, Respondent had never filed the pleadings necessary to commence a probate proceeding. When Ms. Johnson later contacted the probate court, she learned that her acceptance of appointment as personal representative had never been filed. She then sent another e-mail to Respondent and asked him to file this pleading and any other necessary documents. Ms. Johnson later found out that the probate case itself had never been filed. When she repeatedly attempted to contact Respondent for an explanation of his actions, Respondent failed to reply.

The Colorado Supreme Court immediately suspended Respondent from the practice of law in late November 2007. Respondent failed to notify Ms. Johnson of his suspension, return her file, or return the unearned portion of her retainer fee at this time. Ms. Johnson eventually discovered that Respondent had been immediately suspended from the practice of law. When she confronted Respondent about it, he reassured her that he would clear everything up "next week." Ms. Johnson retained new counsel who commenced the probate proceeding.

Respondent acted dishonestly when he told Ms. Johnson that the probate court had rejected his pleadings when in fact he had never filed them. Respondent also knowingly converted the unearned portion of the $17,500.00 retainer fee paid to him by Ms. Johnson. Both of these acts constitute violations of Colo. RPC 8.4(c). Respondent also violated Colo. RPC 1.3, Colo. RPC 1.4(a) and (b), and Colo. RPC 1.16(d) when he neglected Ms. Johnson's legal matter, failed to adequately communicate with her, and finally failed to return her property upon termination of the representation.

### *The Homeowners Litigation Matter—08PDJ057*

In the fall of 2006, certain subdivision homeowners retained Respondent to repre-

sent them in a pending litigation matter. The homeowners collectively paid Respondent a $7000.00 retainer fee. Respondent agreed to bill the homeowners at a rate of $200.00 per hour.

Respondent entered his appearance in the litigation and responded on behalf of certain homeowners to the plaintiffs' motion for default judgment. Respondent also filed an answer on behalf of the other homeowners. The district court entered a decree quieting title in the plaintiffs and enjoined certain homeowners. The district court entered a default judgment against the same homeowners. Respondent moved to set aside the default judgment. The district court granted the motion as to certain homeowners.

Plaintiffs' counsel and Respondent thereafter submitted initial disclosures. No discovery appears to have taken place. In the fall of 2007, the court ordered the parties to engage in mediation. The homeowners were in contact with Respondent about the upcoming mediation. Respondent did not send invoices or billing statements to the clients during his representation.

In late November 2007, the Colorado Supreme Court administratively suspended Respondent from the practice of law. The Colorado Supreme Court then immediately suspended Respondent from the practice of law in a second proceeding on January 16, 2008. Respondent failed to inform his clients of either suspension as required by C.R.C.P. 251.28 and C.R.C.P. 251.8.

In mid-January 2008, a client learned from opposing counsel that Respondent had been suspended from the practice of law. Another client sent an e-mail to Respondent asking him how to respond to opposing counsel. Respondent promised to address this matter upon his return to Durango on January 23, 2008.

On January 24, 2008, the clients checked the Colorado Supreme Court website and learned that Respondent had been suspended from the practice of law. They then retained new counsel to handle their case. One of the homeowners sent an e-mail to Respondent and requested that he surrender their file and provide an accounting of their funds. New counsel later requested the same. Respondent failed to comply with either request.

Respondent violated Colo. RPC 1.15(b) and 1.16(d) when he failed to return the file to his clients and failed to provide them with an accounting of their funds. Respondent also violated Colo. RPC 8.4(c) when he knowingly converted the unearned portion of their $7000.00 retainer fee and when he acted deceitfully in failing to address his suspensions with his clients.

## IV. *SANCTIONS*

The ABA Standards for Imposing Lawyer Sanctions (1991 & Supp.1992) ("ABA *Standards*") and Colorado Supreme Court case law are the guiding authorities for selecting and imposing sanctions for lawyer misconduct.[4] In imposing a sanction after a finding of lawyer misconduct, the Court must first consider the duty breached, the mental state of the lawyer, the injury or potential injury caused, and the aggravating and mitigating evidence pursuant to ABA Standard 3.0.

Respondent's failure to participate in these proceedings leaves the Court with no alternative but to consider only the established facts and rule violations set forth in the complaints as well as the complaining witness statements in evaluating these factors.[5] The Court finds that Respondent violated duties owed to his clients, the public, the legal system, and other duties owed as a professional.[6] Respondent specifically violated his duty to preserve the property of his clients, his duty to diligently perform services on their behalf, his duty to be candid with them during the course of the professional relationship, and his duty abide by the legal rules of substance and procedure which

4. *See In re Roose*, 69 P.3d 43, 46–47 (Colo.2003).

5. The Court considered complaining witness statements from Genevieve Bishop, and Greg and Yvonne Ellis.

6. *See ABA Standards* 4.0. 5.0. 6.0, and 7.0.

affect the administration of justice. The entries of default established that Respondent *knowingly* engaged in this conduct and caused actual and potential harm to his clients, the public, the legal system, and the profession.

The Court finds that several aggravating factors exist in this case including prior disciplinary offenses, a dishonest or selfish motive, a pattern of misconduct, multiple offenses, substantial experience in the practice of law, and indifference to making restitution.[7] Due in part to the absence of any contradictory evidence, the Court finds clear and convincing evidence to support each aggravating factor. Respondent failed to participate in these proceedings and therefore presented no evidence in mitigation.

The ABA *Standards* suggest that disbarment is the presumptive sanction for the most serious misconduct demonstrated by the admitted facts and rule violations in this case.[8] Disbarment is generally appropriate when a lawyer knowingly converts client property and causes injury or potential injury to a client.[9] Colorado Supreme Court case law applying the ABA *Standards* also holds that disbarment is the presumptive sanction for conversion of client or third-party funds.[10] Knowing conversion or misappropriation of client money "consists simply of a lawyer taking a client's money entrusted to him, knowing that it is the client's money and knowing that the client has not authorized the taking."[11] Neither the lawyer's motive in taking the money, nor the lawyer's intent regarding whether the deprivation is temporary or permanent, are relevant for disciplinary purposes.[12] Significant mitigating factors may overcome the presumption of disbarment, however, Respondent failed to present any in this case.[13]

## V. *CONCLUSION*

One of the primary goals of our disciplinary system is to protect the public from lawyers who pose a danger to them. The facts established in the complaint, without explanation or mitigation, reveal the harm Respondent has caused his clients, the public, the legal system, and the profession. He knowingly failed to preserve the property of his clients, failed to diligently perform services on their behalf, failed to be candid with them during the course of the professional relationship, and failed to abide by the legal rules of substance and procedure which affect the administration of justice. Upon consideration of the nature of Respondent's misconduct, his mental state, the actual and potential harm he caused, and the absence of mitigating factors, the Court concludes that the ABA *Standards* and Colorado Supreme Court case law both support disbarment in this case.

## VI. *ORDER*

The Court therefore **ORDERS:**

1. CHARLES WILLIAM RASURE, JR., Attorney Registration No. 25569, is hereby **DISBARRED** from the practice of law, effective thirty one (31) days from the date of this order, and his name shall be stricken from the list of attorneys licensed to practice law in the State of Colorado.
2. Respondent **SHALL** pay full restitution to the Attorneys Fund for Client Protection in the amount of $17,500.00, plus any additional amounts paid by

7. *See* ABA *Standards* 9.22(a), (b). (c), (d), (i) and (j).

8. Respondent's misconduct also implicates ABA *Standards* 4.4, 4.6, 5.1, 6.2, and 7.0.

9. See ABA *Standard* 4.11.

10. *See e.g. People v. Linville,* 114 P.3d 104 (PDJ Colo.2005) (attorney acting as trustee); *People v. Motsenbocker,* 926 P.2d 576 (Colo.1996) (attorney acting as bar association treasurer); and *People v. McDowell,* 942 P.2d 486 (Colo.1997) (attorney holding funds for real estate transaction).

11. *See People v. Varallo,* 913 P.2d 1, 11 (Colo. 1996).

12. *Id.* at 10–11.

13. *See In re Fischer,* 89 P.3d 817 (Colo.2004) (finding significant facts in mitigation).

the fund as a result of this consolidated case.

3. Respondent **SHALL** pay the costs of these proceedings. The People shall submit a "Statement of Costs" within fifteen (15) days of the date of this order. Respondent shall have ten (10) days within which to respond.